AGEE, Plaintiff in Error, v. AGEE'S ADMINISTRATOR, Defendant in Error.

1. An ante-nuptial agreement provided that the future wife, at the death of her husband and herself, should have " at her disposal, to dispose to her son James," certain personal property. *Held*, that the wife had a mere power of appointment; that in no case could she have any claim in her own favor against her husband's estate, growing out of this ante-nuptial agreement.

### Error to Chariton Circuit Court.

This was a demand presented in the county court by Catharine Agee, (formerly Catharine Worsham,) for allowance against the estate of John M. Agee, her deceased husband. The demand was founded upon the following agreement, executed by said John M. Agee immediately before his marriage with the plaintiff:

" Chariton county, Mo., February 15, 1853.

" This bond is to insure to Mrs. Catharine Worsham in having, at her death and mine, at her disposal, to dispose to her son, James Worsham, one bed and bed furniture, *ample sufficient*, and also one leather covered trunk, if he, the said James Worsham, is living, and also four hundred dollars from my estate. In return, I, John M. Agee, take in possession all her bonds and money and other property for my and said Catharine Worsham's own use and benefit during our life-time, for which I bind myself, my heirs, administrators and executors to pay the same out of my estate. Given under my hand and seal this 15th day of December, 1853.

" JOHN M. AGEE, (seal.)

One defence relied on by the administrator below was, that he had acquired any right of action which the plaintiff had under this agreement by virtue of an assignment from her of " all her property, real, mixed and personal, that she was then or thereafter might be entitled to *as the widow of the late John M. Agee, deceased.*"

There was a judgment for the defendant in the county court, and in the Circuit Court on appeal, and the plaintiff brings the case here by writ of error.

*Gardenhire*, for plaintiff in error, insisted that the agreement was valid and would be upheld, and cited 15 Mass. 106 ; 4 B. Monroe, 380 ; 17 Conn. 201 ; 4 Barb. S. C. Rep. 546 ; that it vested a life estate in the plaintiff, with power of disposal at her death to her son James, if living ; and that, whether living or dead at the death of his step-father, was immaterial ; and that the assignment to the defendant of the property to which she was entitled as *widow* did not pass any property to which she was entitled under the agreement, and upon this point, cited 4 Watts & Serg. 546 ; 4 B. Monroe, 380.

*J. W. Morrow* and *J. B. Clark*, for defendant in error. 1. The agreement created no demand in favor of the plaintiff against her husband's estate of which the county court had jurisdiction.   2. It was a power of appointment which could not be exercised until the plaintiff's death, and which did not bind the estate until it was exercised.   3. The plaintiff's right to dispose of the property depends upon the survivorship of James Worsham, and the record does not show whether he is living or dead.

LEONARD, Judge, delivered the opinion of the court.

Questions of this character usually arise upon the construction of wills ; and if the present instrument were testamentary, it would confer only a naked authority upon the intended wife to appoint at her death to her son, if then living, the money and property indicated in it, to take effect out of the husband's estate after his death, and would vest no property in herself.

It is settled that, if a person have a general power of appointment over property, without limitation as to the appointee, and actually exercise the power by deed or will, the property appointed will form part of *his assets*, and be liable to the claims of creditors in preference to the claims of the appointee. But it is otherwise, if it be a particular power for third persons, designated in the power. But even in the case of a general power of appointment, the property is not considered as belonging to the donee of the power, even in favor of creditors, until he has executed the power, or done some act indicating an intention to execute it. Equity, it is said, will, in certain cases, aid the defective execution of the power, but will never supply the total want of execution. Although the money, which a party possessing a general power has a right to raise, may be considered as his property; yet a party, to be affected by the execution of the power, ought only to be charged in the manner and to the extent limited at the creation of the power.

The courts, even in favor of creditors, only direct the application of the money raised under the power, and hold it, when raised, to be assets for the payment of debts, although otherwise appointed by the donee of the power; but they do not, by their own act, charge an estate, and supply the want of the execution of the power, which would be destroying all distinction between power and absolute property. (4 Kent's Comm. 359, 360; Lassetts v. Cornwallis, 2 Vern. 465; Holmes v. Coghill, 7 Ves. 506; 12 Ves. 206; 2 Sug. on Powers, 172.)

"Powers," said Lord Chief Justice Wilmot, (Wilm. 23,) "are never imperative. They leave the act to be done at the will of the party to whom they are given. Trusts are always obligatory upon the conscience of the party entrusted." In Brown v. Higgs, (8 Ves. 574,) Lord Eldon said: "There is not only a mere trust and a mere power, but there is also known to the court a power which the party to whom it is given is entrusted, and required to execute." And then goes on to remark, "if the power is a power which it is the duty of the party to execute, he is a trustee for the exercise of the power.

The court adopts the principle as to trusts, and will not permit his negligence to disappoint the interests of those for whose benefit he is called upon to execute it. When, however, the expressions used are such as confer only a power on the donee, and the application of the property to the person designated is left entirely at his discretion, no trust will be created."

In Bull v. Vardy, (1 Ves. jr. 270,) the testator empowered his wife to give away at her death one thousand pounds—one hundred of it to A. and one hundred to B., the rest to be disposed of by her will. The wife died without having made any disposition of the fund, and in a suit by A., claiming the hundred pounds, it was held that this was no absolute legacy to A., but a naked power in the wife.

If we apply these principles to the present instrument, which is the most favorable view that can be taken of it for the person interested in the power, it can only be considered an agreement on the part of the husband to the effect indicated, which, upon his death, and the due execution of the power by the wife, the courts would enforce against his estate in favor of the son. No appointment, however, has been made, and this plaintiff has but a naked authority to appoint in favor of her son, and therefore, no matter what construction may be put upon her contract with the defendant, *she* has no demand to be allowed in *her* favor against the estate growing out of this ante-nuptial agreement.

Judge Ryland concurring, let the judgment be affirmed.